UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAUNCEY MAURICE JACKSON,

                Petitioner,

                                     CASE NO. 5:09-CV-10869
v.                                 HONORABLE JOHN CORBETT O'MEARA

CINDI CURTIN,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**      **Introduction**

      This is a federal habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Chauncey Maurice Jackson ("Petitioner") was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court and was sentenced consecutive terms of 20 to 40 years imprisonment and two years imprisonment in 2003. In his pleadings, Petitioner raises claims concerning the use of perjured testimony, the admission of witness threats, prosecutorial misconduct, police misconduct, and the effectiveness of trial and appellate counsel. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability.

**II.**      **Facts and Procedural History**

      Petitioner's convictions arise from the shooting death of Michael Lamont Wells in Inkster, Michigan on June 15, 2003. The medical testimony established that the victim died from a single

gunshot wound to the back which entered the left lower back and exited near the right armpit. He also had a bruise on the bridge of his nose and an abrasion on his right shin. There was no evidence of close-range firing on the body, but the victim's clothes were discarded. A bullet was recovered from the right bicep area and given to police.

At trial, Colson Carter, the victim's cousin, testified that he was with his cousin on day of the shooting. They went fishing and then to his grandmother's house in Inkster. The victim wanted to bring a woman over for Father's Day dinner. The woman, Sharron Wynn, lived about a mile from his grandmother's house. Carter and the victim drove by Wynn's house twice. As they turned to go back down Carlysle toward his grandmother's house, they saw a group of men about 30 feet away. Carter testified that one of the men pointed a stick a them and said "boom-boom." Carter then clarified that the victim told him that Petitioner said "boom-boom." Defense counsel objected on hearsay grounds. The trial court responded, "Sounds like hearsay." The prosecution moved on. Carter testified that after Petitioner pointed the stick and said something to the victim, the victim became upset and said something to the men. Carter identified Petitioner as the man who pointed the stick at them. He recalled telling the police that the man had a cut from side to side on his neck, a brown complexion, and braids. Carter further testified that Petitioner responded to the victim by saying, "Bitch-ass nigger, pull up to the stop sign and we'll take care of it." Carter and the victim then drove back to his grandmother's house. After speaking on the phone, the victim left by himself to pick up Wynn. A short time later, a friend called and said that the victim's car had crashed. Carter went to the scene and learned that the victim had died. Carter provided a statement to Inkster Police Detective Anthony Del Greco and identified Petitioner in a photographic array as the man who had pointed the stick at them.

2

Sharron Wynn testified that she lived on Carlysle Street in Inkster on June 15, 2003.  She had known the victim for about a week.  She saw him drive down her street with another man while she was at a neighbor's birthday party.  She returned home and called the victim.  He drove to her house and she went out to the car and spoke with him.  She went back inside her house to change clothes.  She misplaced her keys, so she went outside and told the victim who was still waiting for her.  She founds her keys and was about to walk outside when she saw three men approach the victim's car.  She saw one of the men punched the victim.  The victim leaned toward the passenger side and tried to start his car.  The man who punched him reached inside the car as if he were trying to grab the keys.  Another man, who she identified as Petitioner, then walked up to the driver's side of the car and said, "Oh, you talking some ho-ass shit."  Wynn saw him take something out of his back pocket with his right hand and point it down into the car.  She then heard a sound like a firecracker.  Afterward, she saw Petitioner reach toward the back of his pants.  The men noticed her standing in the door.  Petitioner walked up and looked at her without saying anything.  She saw the victim drive away, missing a child in the street, and run up on the grass, hitting a parked car.  She ran into her house.  She waited a few minutes and then went across the street to get her son from the birthday party.  At that point, people had gathered at the car crash.

Wynn further testified that she knew Petitioner from the neighborhood, but did not know his name until she spoke with neighbors.  She did not recognize the other two men.  She also testified that she had been threatened during the pendency of the proceedings and had moved due to those threats.  The Inkster Police helped her relocate and escorted to and from court.  Wynn recalled speaking with the police.  She said that she did not identify anyone when she first spoke to police because Petitioner and his friends were "all staying in her face" and knew where she lived and she

3

was afraid.  In her second statement, she identified Petitioner as the shooter and identified him in

a photographic array.  She indicated that he was clean-shaven and wearing braids on the day of the

shooting.  She told the police that people told her that he had a neck scar, but she did not notice it

at the time of the shooting because she was staring at his face and was dazed.

Several Inkster Police Officers testified at trial.  Officer Daniel Schewe testified that he

responded to the shooting and secured the scene.  The victim had been shot near the left shoulder

blade area and was slumped over leaning toward the passenger side of his car.  Schewe retrieved the

victim's clothes and personal effects, as well as a recovered bullet, from the hospital and gave them

to detectives.

Officer Jeffrey Czarnecki testified that he responded to the scene.  He observed a small

compact car on the grass facing the street with a black male victim slumped over toward the

passenger side with a gunshot wound to the back left shoulder area.  He spoke to Colston Carter who

told him about the man who had previously confronted the victim by pointing a stick at him and

saying "boom-boom."   His police report described the person as an "unknown black male

approximately five-foot-eleven, 155 to 165 pounds with dark complexion, 19 to 21 years old."

Czarnecki testified that Carter also mentioned a neck scar, but admitted that he did not put that in

his report.  Czarnecki estimated that 50 to 75 people gathered at the scene and he spoke to several

people.  Witnesses who would not provide their names told him that the suspect was next to the

victim's car just prior to the shooting.

Detective Anthony Del Greco testified that he responded to the scene, parked the crime scene

vehicle, and saw that 50 or more people had gathered in the area.  He observed the victim's crashed

car, sketched the scene, and took several photographs, which he described for the jury.  The police

collected one shell casing and a beer can from the front of Wynn's home and another shell casing from down the street. Del Greco attempted to speak with potential witnesses, but they denied seeing anything. Del Greco spoke to Colston Carter and took his statement at the police station. Carter told him about the prior incident where a man held up a stick and said "boom-boom." Carter had described the man as a black male, five-ten or five-eleven, dark to medium complexion, braids, and with a distinctive large scar across his neck. Del Greco recognized that description as Petitioner. He did not know anyone else in Inkster with a similar scar. Del Greco also testified that he obtained a search warrant for Sharron Wynn's home and brought her to the station for questioning. At first, Wynn said that she did not know anything, but eventually she identified "Chauncey" as the shooter. Del Greco said that Wynn was afraid to get involved and that he helped her relocate. Del Greco conducted photographic arrays for Carter and Wynn and both of them identified Petitioner. Del Greco thereafter obtained a warrant for Petitioner's arrest. Petitioner was taken into custody about two weeks later, but Del Greco could not recall whether he surrendered or was apprehended.

Del Greco recalled the preliminary proceedings for the case and testified that he and another detective supervised the removal of Wynn's screen door. Del Greco said that he did not request any fingerprint testing in the case due to the Michigan State Police backlog. The police discarded the victim's clothes and did not request gunshot residue testing for the same reason. He did not request ballistic testing for the bullet taken from the body or the shell casing found at the scene because no gun was recovered. Del Greco admitted that there was no physical evidence linking Petitioner to the shooting. He also admitted that Wynn never told him that Petitioner had a neck scar and that she said that the shooter used his right hand. Del Greco indicated that Petitioner could be ambidextrous, but acknowledged that his arrest card identified him as left-handed. Del Greco further recalled

5

Wynn telling him that she was on the porch and half in/half out of the door when the shooting occurred, that she ran back inside because she was afraid, and that she heard the car crash. Del Greco acknowledged that he spoke with potential alibi witness Ernestine Yharbrough before trial and advised her that there is a penalty for perjury. Del Greco did not believe that Wynn had been threatened by Petitioner personally although she had been threatened and was fearful.

After the prosecution rested, defense counsel moved for a directed verdict. The trial court denied the motion. Petitioner did not testify at trial, but presented an alibi defense. Petiitoner's girlfriend, Antoinette Todd, claimed that he was with her at the time of the shooting. Specifically, she testified that they were at her aunt's house on Carlysle Street in Inkster for a Father's Day neighborhood barbecue that afternoon. Petitioner left with a friend for a period of time and they met up again at a parking lot on Carlysle and Andover. When they met, Petitioner was with Gloria Brown, Bruce Johnson, and LaTasha Brown. While in the parking lot, they heard a shot and started running toward the sound. They saw a car come out of a circle, hit another car, and spin into a pole. Todd also testified that Petitioner was left handed and had a mustache and a beard. On the day of the shooting, he was wearing a black shirt and had his hair in an Afro without braids. Todd lived with Petitioner in a motel after the shooting and did not contact police when she learned he was being sought. She refused to sign a statement when questioned by the authorities.

The prosecution offered one rebuttal witness. Davena Brown-Farmer, LaTasha Brown's mother, testified that she held a graduation open house for her daughter at her mother's house on Pine Street in Inkster on the day of the shooting. Her daughter remained at the party for its duration from about 5:00 p.m. to 10:00 p.m. Her daughter's boyfriend, Bruce Johnson, and her sister, Gloria Brown, also attended the party. Brown-Farmer confirmed that her daughter was in the hospital and

unable to appear at trial.

At the close of trial, the jury convicted Petitioner of second-degree murder and felony firearm. The trial court subsequently sentenced him to 20 to 40 years imprisonment on the murder conviction and a consecutive term of two years imprisonment on the felony firearm conviction.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the prosecution presented insufficient evidence to support his convictions, (2) the verdict was against the great weight of the evidence, (3) the trial court erred in admitting evidence of threats to Sharron Wynn, (4) the photographic show-up for Sharron Wynn was improper, and (5) trial counsel was ineffective for failing to seek suppression and object to Wynn's photographic array identification and for failing to seek a mistrial when Colston Carter testified that Petitioner pointed a stick at the victim and said "boom-boom." The court denied relief on those claims and affirmed Petitioner's convictions. *People v. Jackson*, No. 253391, 2005 WL 991596 (Mich. Ct. App. April 28, 2005) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Jackson*, 474 Mich. 972, 707 N.W.2d 199 (2005).

Petitioner subsequently filed a motion for relief from judgment with the state trial court asserting that: (1) he is innocent and Sharron Wynn committed perjury and provided false testimony at trial, (2) Detective Del Greco committed perjury and gave false testimony at trial, (3) the prosecutor engaged in misconduct at trial, (4) the prosecutor engaging in misconduct at sentencing, (5) the police engaged in misconduct, (6) trial counsel was ineffective, and (7) appellate counsel was ineffective. The trial court denied the motion, ruling that Petitioner had failed to establish actual prejudice under Michigan Court Rule 6.508(D). *People v. Jackson*, No. 03-008929-01 (Wayne Co. Cir. Ct. Sept. 19, 2007) (unpublished). Petitioner filed a delayed application for leave to appeal with

7

the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. Jackson*, No. 283873 (Mich. Ct. App. May 14,

2008) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme

Court, which was similarly denied. *People v. Jackson*, 483 Mich. 893, 760 N.W.2d 493 (2009).

Petitioner, through counsel, thereafter instituted this federal habeas action. He raises the

following claims:

I.      His due process rights were violated by the admission of perjured testimony
        from Sharron Wynn and Detective Del Greco.

II.     His due process rights were violated by the admission of evidence of threats
        received by Sharron Wynn.

III.    His due process rights were violated where the prosecutor engaged in
        misconduct by introducing testimony regarding threats and fearfulness of
        witnesses and improperly arguing such evidence, by allowing Wynn to
        commit perjury and provide false testimony, by commenting on the "boom-
        boom" evidence, and by commenting on the fact that Petitioner did not testify
        at trial.

IV.     His due process rights were violated where Detective Del Greco engaged in
        misconduct by persuading an alibi witness not to testify.

V.      He was denied the effective assistance of trial counsel where counsel failed
        to object to numerous instances of prosecutorial misconduct and failed to
        request a mistrial regarding the "boom-boom" evidence.

VI.     He was denied the effective assistance of appellate counsel where failed to
        raise meritorious issues.

Respondent has filed an answer to the petition contending that it should be denied because the

claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer.

## III.    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C.

§ 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective

8

date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

9

decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give

10

reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.**   **Analysis**

**A.**   **Perjured Testimony Claim**

Petitioner first asserts that he is entitled to habeas relief because Sharron Wynn and Detective Del Greco committed perjury and gave false testimony at trial. In support of his claim, Petitioner presents Wynn's and Del Greco's deposition testimony from a post-trial federal civil case that Sharron Wynn brought against the Inkster Police Department concerning her treatment as a witness. Respondent contends that this claim is barred by procedural default and/or lacks merit.

The United States Supreme Court has made clear that the "deliberate deception of a court

11

and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

On collateral review in this case, the state trial court denied relief on this claim. The court essentially found that while there were some inconsistencies between Wynn's trial and deposition testimony, Petitioner had failed to establish that Wynn's trial testimony was false and/or that the result of the trial would have been different with further evidence. The court further found that Petitioner had not shown that Del Greco's trial and deposition testimony was inconsistent or that Del Greco gave false testimony at trial. *See Jackson*, No. 03-008929-01 at pp. 17-28. The Michigan appellate courts denied leave to appeal in standard orders.

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has failed to establish that Wynn's or Del Greco's trial testimony was false, rather than merely inconsistent with their deposition testimony which was given two years after trial and for a different purpose. As explained in detail

12

by the trial court, many of the disputed statements were not actually inconsistent when read in context, several inconsistencies were minor variations or clarifications of events, and many of the inconsistencies could have been due to the type of questions asked, the different focus of the two proceedings, and the passage of time. Additionally, while some of the differences in Wynn's trial and deposition testimony concerned her actions at the time of the shooting and her identification of Petitioner, which was certainly relevant, those differences did not change her underlying testimony that Petitioner was the shooter. The fact that a witness contradicts herself or himself or changes her or his story does not establish perjury. *See United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993). To be sure, there is no reason to believe that Wynn's or Del Greco's civil deposition testimony is more (or less) truthful than their trial testimony.

Petitioner has also failed to show that the prosecution knowingly presented false testimony. "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty." *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009). There is no indication in the record that the prosecution believed that Wynn or Del Greco provided false testimony at trial or that the prosecution had reason to doubt the veracity of their testimony at that time. Petitioner has not established a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### B.   Admission of Threats Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting evidence of threats against Sharron Wynn and evidence that the police had helped her

13

relocate and provided her with protection.  Respondent contends that this claim is not cognizable on habeas review and lacks merit.

The Michigan Court of Appeals denied relief on this claim, considering one instance as properly preserved and three instances as not preserved (plain error review).  The court found that the threat evidence was properly admitted.  The court explained in pertinent part:

> Wynn testified specifically that defendant threatened her. She stated that defendant and his friends were "all staying in my face," that she was afraid, and that, because of this fear, she did not initially tell police that defendant was the shooter. Our Supreme Court has explained:

> A defendant's threat against a witness is generally admissible. It is conduct that can demonstrate consciousness of guilt....

> [A] threatening remark (while never proper) might in some instances simply reflect the understandable exasperation of a person accused of a crime that the person did not commit. However, it is for the jury to determine the significance of a threat in conjunction with its consideration of the other testimony produced in the case. [*People v. Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996) (citations omitted); *see also People v. Kelly*, 231 Mich App 627, 640; 588 NW2d 480 (1998).]

> This testimony not only tended to make the fact that defendant actually shot Wells more probable, but it also made it more probable that Wynn had a motive or incentive to initially lie to police. The evidence was offered to aid the factfinder in evaluating Wynn's credibility regarding her prior statements to police and, ultimately, identification of defendant as the shooter. "If a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact." *People v. Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995), *modified and remanded* 450 Mich 1212; 539 NW2d 504 (1995). Further, evidence that police agreed to give Wynn protection and re-locate her and her son supports Wynn's decision to come forward. Accordingly, we conclude that the testimony was relevant and that the danger of unfair prejudice, confusion of the issues, or misleading the jury did not substantially outweigh the probative value of the evidence. *See* MRE 403; *Fletcher, supra* at 553.

*Jackson*, 2005 WL 991596 at *4-5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

14

nor an unreasonable application thereof.  Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting testimony under the Michigan Rules of Evidence, he merely alleges violations of state law which do not entitle him to federal habeas relief.  *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003).  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner has also not shown that the admission of the disputed evidence violated his federal due process rights.  Under federal law, threats are generally considered "verbal acts" not admitted for the truth of the matter asserted and such evidence is admissible under Federal Rule of Evidence 403 unless the potential for unfair prejudice substantially outweighs its probative value. *See United States v. Thomas*, 86 F.3d 647, 653-54 (7th Cir. 1996).  Possible threats to a witness are relevant to assess credibility.  *See United States v. Pierson*, 121 F.3d 560, 563 (9th Cir. 1997); *see*

15

*also Burton v. Renico*, 391 F.3d 764, 775 (2004) (admission of witness threats did not violate due process where they were used to explain why witness did not report petitioner's conduct to police); *Sadler v. Jabe,* 96 F.3d 1448, 1996 WL 506375, *1 (6th Cir. 1996) (testimony that defendant's father threatened witness was relevant to witness's credibility and was properly admitted to rehabilitate her when her motive to testify was called into question).  When evidence of a threat is necessary to impeach or rehabilitate a witness's credibility, and there is no indication that its use is pretextual, it may be admissible despite its potential for prejudice. *See Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir. 1994).  In this case, defense counsel challenged Sharron Wynn's credibility throughout the trial.  The state court thus properly determined that the threat (and police protection) evidence was relevant to her credibility and was admissible.

Additionally, to the extent that the alleged threats were not attributed to Petitioner, it cannot be said that he was so prejudiced by such testimony that his trial was rendered fundamentally unfair.  *See Pierson*, 121 F.3d at 563.  To the extent that the threats were or could have been attributed to Petitioner, they were relevant to establish consciousness of guilt.  *See United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006); *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).  Petitioner has not shown that the admission of the evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair.  *See, e.g., Cotton v. McKee*, No. 07-10291-BC, 2008 WL 4647691, *5 (E.D. Mich. Oct. 20, 2008) (denying habeas relief on claim that prosecutor improperly solicited evidence that petitioner had threatened to kill a witness because no clearly established Supreme Court law holds that due process is violated by such evidence and evidence is admissible to prove consciousness of guilt).  Habeas relief is not warranted on this claim.

**C.**      <u>**Ineffective Assistance of Trial Counsel Claim**</u>

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to seek a mistrial when evidence that Petitioner pointed a stick at the victim and said "boom-boom" was introduced. Respondent contends that this claim lacks merit and does not warrant relief.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim finding that Petitioner had established that counsel was ineffective. The court explained:

> Defendant also contends that he received ineffective assistance of counsel when counsel failed to move for a mistrial when Carter testified that defendant pointed a stick at Wells and said "boom-boom." We disagree. Defendant specifically objects to Carter's testimony that defendant pointed a stick at Wells and said "boom-boom." Carter initially testified that defendant made this statement as he pointed the stick, but then later testified that he never actually heard defendant make this statement himself, but was told by Wells that defendant made the statement. As soon as Carter testified that he did not have firsthand knowledge of defendant's statement, defense counsel's objection on hearsay grounds was sustained. It is defendant's position on appeal, however, that defense counsel should then have moved for a mistrial.
>
> We conclude that defendant has not sustained his burden of demonstrating both deficient performance by counsel and prejudice. *Strickland v. Washington*, 466 US 668; 104 S Ct 2052; 80 LEd2d 674 (1984), *People v. Pickens*, 446 Mich 298; 521 NW2d 797 (1994). First, once it was evident that the statement may have had a hearsay basis, defense counsel timely objected to the testimony on hearsay grounds. Second, on this record, defendant has not established a reasonable probability that a motion for a mistrial was warranted and would have been successful. *Id*.

18

*Jackson*, 2005 WL 991596 at *7.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has not established that counsel erred and/or that he was prejudiced by counsel's conduct in not requesting a mistrial. The record in this case reveals that defense counsel made a timely hearsay objection to the disputed testimony and the trial court appears to have agreed with counsel. Under Michigan law, a mistrial may only be granted "if an irregularity occurs that prejudices the defendant's rights so much that it impairs his ability to receive a fair trial." *People v. Schaw*, 288 Mich. App. 231, 236, 791 N.W.2d 743 (2010). Petitioner has not shown that the trial court would have found the "boom-boom" reference so prejudicial as to warrant a mistrial, particularly given the admission of Colston Carter's testimony that Petitioner pointed a stick at the victim and made another threatening remark prior to the shooting. He has thus failed to establish that counsel was ineffective in this regard.

As to the subsequent "boom-boom" references by the prosecutor, defense counsel did not object. Counsel may have reasonably decided that the references were brief and that it would be better to let the remarks pass rather than to draw the jury's attention to them. Counsel may have also believed that objections would bring unwanted consideration from the trial court. For example, the court may have revisited the issue and determined that the "boom-boom" comment was admissible as a present sense impression or under another exception to the hearsay rules. Counsel may have even reasonably believed that the references to police interviews and reports were proper because they were not offered for the truth of the matter asserted such that any objection would have been futile. Nonetheless, even if the lack of further objection was deficient given the trial court's initial comment, Petitioner has not shown that he was prejudiced by counsel's

conduct given Carter's other testimony about the confrontation, as well as Sharron Wynn's identification of Petitioner as the shooter. The trial court also instructed the jury about the proper consideration of the evidence and that attorneys' comments are not evidence. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it."). Moreover, had counsel objected to the references, the trial court likely would have issued a curative instruction rather than take the drastic measure of declaring a mistrial. Petitioner has failed to meet his burden of establishing that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted.

### D.       Procedural Default of Claims

Respondent contends that Petitioner's remaining claims concerning the effectiveness of defense counsel, prosecutorial misconduct, and police misconduct are barred by procedural default because he first raised those claims on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or

unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner had failed to demonstrate actual prejudice because his underlying claims lacked merit. Accordingly, Petitioner's remaining claims concerning the effectiveness of defense counsel, prosecutorial misconduct, and police misconduct are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See*

21

*Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must … determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out

22

weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues on direct appeal, including claims concerning the sufficiency of the evidence, the great weight of the evidence, the admission of threat evidence, the pre-trial identification procedures, and the effectiveness of trial counsel. Such issues, although ultimately unsuccessful, were substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the ones raised by appellate counsel on direct appeal. To be sure, the trial court, in considering the prejudice component of the cause and prejudice test, found that the claims lacked merit. *See Jackson*, No. 03-008929-01 at pp. 3-16, 28. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that it would find that the defaulted claims lack merit for the reasons stated by the trial court in denying Petitioner's motion for relief from judgment.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### E.   Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing defaulted issues on direct appeal. Petitioner is not entitled to relief on any such claim. As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit. Habeas relief is not warranted on this claim.

### V.   <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his habeas petition and the petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the

petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id*. at 336-37. When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85. Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. A certificate of appealability is not warranted.

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/John Corbett O'Meara
United States District Judge


Date:  February 7, 2012

25

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, February 7, 2012, using the ECF system.

s/William Barkholz
Case Manager